Justice KENNEDY delivered the opinion of the Court.
Last Term, this Court decided Johnson v. United States, 576 U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). Johnson considered the residual clause of the *1261 Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B)(ii). The Court held that provision void for vagueness. The present case asks whether Johnson is a substantive decision that is retroactive in cases on collateral review.
I
Federal law prohibits any felon-meaning a person who has been convicted of a crime punishable by more than a year in prison-from possessing a firearm. 18 U.S.C. § 922(g). A person who violates that restriction can be sentenced to prison for up to 10 years. § 924(a)(2). For some felons, however, the Armed Career Criminal Act imposes a much more severe penalty. Under the Act, a person who possesses a firearm after three or more convictions for a "serious drug offense" or a "violent felony" is subject to a minimum sentence of 15 years and a maximum sentence of life in prison. § 924(e)(1). Because the ordinary maximum sentence for a felon in possession of a firearm is 10 years, while the minimum sentence under the Armed Career Criminal Act is 15 years, a person sentenced under the Act will receive a prison term at least five years longer than the law otherwise would allow.
The Act defines "violent felony" as
"any crime punishable by imprisonment for a term exceeding one year ... that-
"(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
"(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B).
Subsection (i) of this definition is known as the elements clause. The end of subsection (ii)-"or otherwise involves conduct that presents a serious potential risk of physical injury to another"-is known as the residual clause. See Johnson, supra, at ----, 135 S.Ct., at 2555-2556. It is the residual clause that Johnson held to be vague and invalid.
The text of the residual clause provides little guidance on how to determine whether a given offense "involves conduct that presents a serious potential risk of physical injury." This Court sought for a number of years to develop the boundaries of the residual clause in a more precise fashion by applying the statute to particular cases. See James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (residual clause covers Florida offense of attempted burglary); Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (residual clause does not cover New Mexico offense of driving under the influence of alcohol); Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (residual clause does not cover Illinois offense of failure to report to a penal institution); Sykes v. United States, 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (residual clause covers Indiana offense of vehicular flight from a law-enforcement officer). In Johnson, a majority of this Court concluded that those decisions did not bring sufficient clarity to the scope of the residual clause, noting that the federal courts remained mired in "pervasive disagreement" over how the clause should be interpreted. Johnson, 576 U.S., at ----, 135 S.Ct., at 2560.
The Johnson Court held the residual clause unconstitutional under the void-for-vagueness doctrine, a doctrine that is mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to *1262 the States). The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Id., at ----, 135 S.Ct., at 2556. Johnson determined that the residual clause could not be reconciled with that prohibition.
The vagueness of the residual clause rests in large part on its operation under the categorical approach. The categorical approach is the framework the Court has applied in deciding whether an offense qualifies as a violent felony under the Armed Career Criminal Act. See id., at ----, 135 S.Ct., at 2556-2557. Under the categorical approach, "a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.' " Ibid. (quoting Begay, supra, at 141, 128 S.Ct. 1581 ). For purposes of the residual clause, then, courts were to determine whether a crime involved a "serious potential risk of physical injury" by considering not the defendant's actual conduct but an "idealized ordinary case of the crime." 576 U.S., at ----, 135 S.Ct., at 2561.
The Court's analysis in Johnson thus cast no doubt on the many laws that "require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion ." Ibid. The residual clause failed not because it adopted a "serious potential risk" standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense. In the Johnson Court's view, the "indeterminacy of the wide-ranging inquiry" made the residual clause more unpredictable and arbitrary in its application than the Constitution allows. Id., at ----, 135 S.Ct., at 2557. "Invoking so shapeless a provision to condemn someone to prison for 15 years to life," the Court held, "does not comport with the Constitution's guarantee of due process." Id., at ----, 135 S.Ct., at 2560.
II
Petitioner Gregory Welch is one of the many offenders sentenced under the Armed Career Criminal Act before Johnson was decided. Welch pleaded guilty in 2010 to one count of being a felon in possession of a firearm. The Probation Office prepared a presentence report finding that Welch had three prior violent felony convictions, including a Florida conviction for a February 1996 "strong-arm robbery." The relevant Florida statute prohibits taking property from the person or custody of another with "the use of force, violence, assault, or putting in fear." Fla. Stat. § 812.13(1) (1994). The charging document from the 1996 Florida case tracked that statutory language. App. 187a. The 2010 federal presentence report provides more detail. It states that, according to the robbery victim, Welch punched the victim in the mouth and grabbed a gold bracelet from his wrist while another attacker grabbed a gold chain from his neck.
Welch objected to the presentence report, arguing (as relevant here) that this conviction was not a violent felony conviction under the Armed Career Criminal Act. The District Court overruled the objection. It concluded that the Florida offense of strong-arm robbery qualified as a violent felony both under the elements clause, 18 U.S.C. § 924(e)(2)(B)(i), and the residual clause, § 924(e)(2)(B)(ii). The District Court proceeded to sentence Welch to the Act's mandatory minimum sentence of 15 years in prison.
*1263 The Court of Appeals for the Eleventh Circuit affirmed. That court did not decide whether the conviction at issue could qualify as a violent felony under the elements clause. Instead, it held only that the conviction qualified under the residual clause. This Court denied certiorari, see Welch v. United States, 568 U.S. ----, 133 S.Ct. 913, 184 L.Ed.2d 702 (2013), and Welch's conviction became final.
In December 2013, Welch appeared pro se before the District Court and filed a collateral challenge to his conviction and sentence through a motion under 28 U.S.C. § 2255. He argued, among other points, that his strong-arm robbery conviction itself was "vague" and that his counsel was ineffective for allowing him to be sentenced as an armed career criminal. The District Court denied the motion and denied a certificate of appealability.
Still proceeding pro se, Welch applied to the Court of Appeals for a certificate of appealability. His application noted that Johnson was pending before this Court. Welch argued, in part, that his "armed career offender status is unconstitutional and violate[s] [his] Fifth Amendment right to notice of the state priors." App. 20a. Two months later, Welch filed a motion asking the Court of Appeals to hold his case in abeyance until Johnson could be decided, "based on the fact he was sentenced under the [residual clause]." App. 15a.
In June 2015, the Court of Appeals entered a brief single-judge order denying the motion for a certificate of appealability. Less than three weeks later, this Court issued its decision in Johnson holding, as already noted, that the residual clause is void for vagueness. Welch filed a motion asking the Court of Appeals for additional time to seek reconsideration of its decision in light of Johnson, but the court returned that motion unfiled because Welch's time to seek reconsideration already had expired.
Welch then filed a pro se petition for certiorari. His petition presented two questions: whether the District Court erred in denying his § 2255 motion because his Florida robbery conviction does not qualify as a violent felony conviction under the Armed Career Criminal Act; and whether Johnson announced a substantive rule that has retroactive effect in cases on collateral review. Pet. for Cert. i. This Court granted the petition. 577 U.S. ----, 136 S.Ct. 790, 193 L.Ed.2d 534 (2016). Because the United States, as respondent, agrees with Welch that Johnson is retroactive, the Court appointed Helgi C. Walker as amicus curiae in support of the judgment of the Court of Appeals. She has ably discharged her responsibilities.
III
A
This case comes to the Court in a somewhat unusual procedural posture. Under the Antiterrorism and Effective Death Penalty Act of 1996, there can be no appeal from a final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). That standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Obtaining a certificate of appealability "does not require a showing that the appeal will succeed," and "a court of appeals should not decline the application ...
*1264 merely because it believes the applicant will not demonstrate an entitlement to relief." Miller-El v. Cockrell, 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).
The decision under review here is the single-judge order in which the Court of Appeals denied Welch a certificate of appealability. Under the standard described above, that order determined not only that Welch had failed to show any entitlement to relief but also that reasonable jurists would consider that conclusion to be beyond all debate. See Slack, supra, at 484, 120 S.Ct. 1595. The narrow question here is whether the Court of Appeals erred in making that determination. That narrow question, however, implicates a broader legal issue: whether Johnson is a substantive decision with retroactive effect in cases (like Welch's) on collateral review. If so, then on the present record reasonable jurists could at least debate whether Welch should obtain relief in his collateral challenge to his sentence. On these premises, the Court now proceeds to decide whether Johnson is retroactive.
B
The normal framework for determining whether a new rule applies to cases on collateral review stems from the plurality opinion in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). That opinion in turn drew on the approach outlined by the second Justice Harlan in his separate opinions in Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The parties here assume that the Teague framework applies in a federal collateral challenge to a federal conviction as it does in a federal collateral challenge to a state conviction, and we proceed on that assumption. See Chaidez v. United States, 568 U.S. ----, ----, n. 16, 133 S.Ct. 1103, 1113, n. 16, 185 L.Ed.2d 149 (2013) ; Danforth v. Minnesota, 552 U.S. 264, 269, n. 4, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).
Under Teague, as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S., at 310, 109 S.Ct. 1060. Teague and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules. First, "[n]ew substantive rules generally apply retroactively." Schriro v. Summerlin, 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ; see Montgomery v. Louisiana, 577 U.S. ----, ----, 136 S.Ct. 718, 728, 193 L.Ed.2d 599 (2016) ; Teague, supra, at 307, 311, 109 S.Ct. 1060. Second, new " 'watershed rules of criminal procedure,' " which are procedural rules "implicating the fundamental fairness and accuracy of the criminal proceeding," will also have retroactive effect. Saffle v. Parks, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ; see Teague, supra, at 311-313, 109 S.Ct. 1060.
It is undisputed that Johnson announced a new rule. See Teague, supra, at 301, 109 S.Ct. 1060 ("[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final"). The question here is whether that new rule falls within one of the two categories that have retroactive effect under Teague . The parties agree that Johnson does not fall into the limited second category for watershed procedural rules. Welch and the United States contend instead that Johnson falls into the first category because it announced a substantive rule.
"A rule is substantive rather than procedural if it alters the range of *1265 conduct or the class of persons that the law punishes." Schriro, 542 U.S., at 353, 124 S.Ct. 2519. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." Id., at 351-352, 124 S.Ct. 2519 (citation omitted); see Montgomery, supra, at ----, 136 S.Ct., at 728. Procedural rules, by contrast, "regulate only the manner of determining the defendant's culpability." Schriro, 542 U.S., at 353, 124 S.Ct. 2519. Such rules alter "the range of permissible methods for determining whether a defendant's conduct is punishable." Ibid . "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." Id., at 352, 124 S.Ct. 2519.
Under this framework, the rule announced in Johnson is substantive. By striking down the residual clause as void for vagueness, Johnson changed the substantive reach of the Armed Career Criminal Act, altering "the range of conduct or the class of persons that the [Act] punishes." Schriro, supra, at 353, 124 S.Ct. 2519. Before Johnson, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After Johnson, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under Johnson, so it can no longer mandate or authorize any sentence. Johnson establishes, in other words, that "even the use of impeccable factfinding procedures could not legitimate" a sentence based on that clause. United States v. United States Coin & Currency, 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). It follows that Johnson is a substantive decision.
By the same logic, Johnson is not a procedural decision. Johnson had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the Armed Career Criminal Act. See Schriro, 542 U.S., at 353, 124 S.Ct. 2519. It did not, for example, "allocate decisionmaking authority" between judge and jury, ibid., or regulate the evidence that the court could consider in making its decision, see Whorton v. Bockting, 549 U.S. 406, 413-414, 417, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) ; Mackey, supra, at 700-701, 91 S.Ct. 1160 (opinion of Harlan, J.). Unlike those cases, Johnson affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied. Johnson is thus a substantive decision and so has retroactive effect under Teague in cases on collateral review.
C
Amicus urges the Court to adopt a different understanding of the Teague framework. She contends courts should apply that framework by asking whether the constitutional right underlying the new rule is substantive or procedural. Under that approach, amicus concludes that Johnson is a procedural decision because the void-for-vagueness doctrine that Johnson applied is based, she asserts, on procedural due process.
Neither Teague nor its progeny support that approach. As described above, this Court has determined whether a new rule is substantive or procedural by considering the function of the rule, not its underlying constitutional source. See, e.g., Schriro, supra, at 351-353, 124 S.Ct. 2519.
*1266 That is for good reason. The Teague framework creates a balance between, first, the need for finality in criminal cases, and second, the countervailing imperative to ensure that criminal punishment is imposed only when authorized by law. That balance turns on the function of the rule at issue, not the constitutional guarantee from which the rule derives. If a new rule regulates only the procedures for determining culpability, the Teague balance generally tips in favor of finality. The chance of a more accurate outcome under the new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures "conformed to then-existing constitutional standards." Teague, supra, at 310, 109 S.Ct. 1060. On the other hand, if a new rule changes the scope of the underlying criminal proscription, the balance is different. A change of that character will "necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.' " Bousley v. United States, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (quoting Davis v. United States, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) ). By extension, where the conviction or sentence in fact is not authorized by substantive law, then finality interests are at their weakest. As Justice Harlan wrote, "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose." Mackey, 401 U.S., at 693, 91 S.Ct. 1160 (opinion of Harlan, J.).
The Teague balance thus does not depend on whether the underlying constitutional guarantee is characterized as procedural or substantive. It depends instead on whether the new rule itself has a procedural function or a substantive function-that is, whether it alters only the procedures used to obtain the conviction, or alters instead the range of conduct or class of persons that the law punishes. See Schriro, supra, at 353, 124 S.Ct. 2519 ; Montgomery, 577 U.S., at ----, 136 S.Ct., at 732-733. The emphasis by amicus on the constitutional guarantee behind the new rule, then, would untether the Teague framework from its basic purpose.
The approach amicus suggests also would lead to results that cannot be squared with prior precedent. Decisions from this Court show that a rule that is procedural for Teague purposes still can be grounded in a substantive constitutional guarantee. For instance, the Court has adopted certain rules that regulate capital sentencing procedures in order to enforce the substantive guarantees of the Eighth Amendment. The consistent position has been that those rules are procedural, even though their ultimate source is substantive. See, e.g., Beard v. Banks, 542 U.S. 406, 408, 416-417, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) ; Sawyer v. Smith, 497 U.S. 227, 233, 241-242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). From the converse perspective, there also can be substantive rules based on constitutional protections that, on the theory amicus advances, likely would be described as procedural. For instance, a decision that invalidates as void for vagueness a statute prohibiting "conduct annoying to persons passing by," cf. Coates v. Cincinnati, 402 U.S. 611, 612, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), would doubtless alter the range of conduct that the law prohibits. That would make it a substantive decision under our precedent, see Schriro, 542 U.S., at 353, 124 S.Ct. 2519 even if the reasons for holding that statute invalid could be characterized as procedural.
Amicus next relies on language from this Court's cases describing substantive decisions as those that "place particular conduct or persons ... beyond the State's *1267 power to punish," id., at 352, 124 S.Ct. 2519 or that "prohibi[t] a certain category of punishment for a class of defendants because of their status or offense," Saffle, 494 U.S., at 494, 110 S.Ct. 1257 (internal quotation marks omitted). Cases such as these, in which the Constitution deprives the Government of the power to impose the challenged punishment, "represen[t] the clearest instance" of substantive rules for which retroactive application is appropriate. Mackey, supra, at 693, 91 S.Ct. 1160 (opinion of Harlan, J.). Drawing on those decisions, amicus argues that Johnson is not substantive because it does not limit Congress' power: Congress is free to enact a new version of the residual clause that imposes the same punishment on the same persons for the same conduct, provided the new statute is precise enough to satisfy due process.
Although this Court has put great emphasis on substantive decisions that place certain conduct, classes of persons, or punishments beyond the legislative power of Congress, the Court has also recognized that some substantive decisions do not impose such restrictions. The clearest example comes from Bousley, supra . In Bousley, the Court was asked to determine what retroactive effect should be given to its decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Bailey considered the "use" prong of 18 U.S.C. § 924(c)(1), which imposes increased penalties on the use of a firearm in relation to certain crimes. The Court held as a matter of statutory interpretation that the "use" prong punishes only "active employment of the firearm" and not mere possession. 516 U.S., at 144, 116 S.Ct. 501. The Court in Bousley had no difficulty concluding that Bailey was substantive, as it was a decision "holding that a substantive federal criminal statute does not reach certain conduct." Bousley, supra, at 620, 118 S.Ct. 1604 ; see Schriro, supra, at 354, 124 S.Ct. 2519 ("A decision that modifies the elements of an offense is normally substantive rather than procedural"). The Court reached that conclusion even though Congress could (and later did) reverse Bailey by amending the statute to cover possession as well as use. See United States v. O'Brien, 560 U.S. 218, 232-233, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010) (discussing statutory amendment known as the "Bailey fix"). Bousley thus contradicts the contention that the Teague inquiry turns only on whether the decision at issue holds that Congress lacks some substantive power.
Amicus recognizes that Bousley does not fit the theory that, in her view, should control this case. She instead proposes an ad hoc exception, contending that Bousley "recognized a separate subcategory of substantive rules" for decisions that interpret statutes (but not those, like Johnson, that invalidate statutes). Brief for Court-Appointed Amicus Curiae in Support of Judgment Below 40. For support, amicus looks to the separation-of-powers doctrine. Her argument is that statutory construction cases are substantive because they define what Congress always intended the law to mean-unlike Johnson, which struck down the residual clause regardless of Congress' intent.
That argument is not persuasive. Neither Bousley nor any other case from this Court treats statutory interpretation cases as a special class of decisions that are substantive because they implement the intent of Congress. Instead, decisions that interpret a statute are substantive if and when they meet the normal criteria for a substantive rule: when they "alte[r] the range of conduct or the class of persons that the law punishes." Schriro, supra, at 353, 124 S.Ct. 2519.
*1268 The separation-of-powers argument that amicus raises is also misplaced. Bousley noted that the separation of powers prohibits a court from imposing criminal punishment beyond what Congress meant to enact. 523 U.S., at 620-621, 118 S.Ct. 1604 ("[I]t is only Congress, and not the courts, which can make conduct criminal"). But a court likewise is prohibited from imposing criminal punishment beyond what Congress in fact has enacted by a valid law. In either case a court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.
Treating decisions as substantive if they involve statutory interpretation, but not if they involve statutory invalidation, would produce unusual outcomes. "It has long been our practice ... before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction." Skilling v. United States, 561 U.S. 358, 405-406, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). Amicus acknowledges that a decision that saves a vague statute by adopting a limiting construction is substantive, so anyone who falls outside the limiting construction can use that decision to seek relief on collateral review. But amicus also contends that, if a court takes the further step of striking down the whole statute as vague, that decision is procedural, so no one can use it to seek relief on collateral review. That arbitrary distinction has no place in the Teague framework.
It should be noted, of course, that not every decision striking down a statute is ipso facto a substantive decision. A decision that strikes down a procedural statute-for example, a statute regulating the types of evidence that can be presented at trial-would itself be a procedural decision. It would affect only the "manner of determining the defendant's culpability," not the conduct or persons to be punished. Schriro, 542 U.S., at 353, 124 S.Ct. 2519 (emphasis deleted). A decision of this kind would have no retroactive effect under Teague unless it could be considered a "watershed" procedural rule. See Teague, 489 U.S., at 311-313, 109 S.Ct. 1060. Johnson, however, struck down part of a criminal statute that regulates conduct and prescribes punishment. It thereby altered "the range of conduct or the class of persons that the law punishes." Schriro, supra, at 353, 124 S.Ct. 2519. It follows that Johnson announced a substantive rule that has retroactive effect in cases on collateral review.
* * *
It may well be that the Court of Appeals on remand will determine on other grounds that the District Court was correct to deny Welch's motion to amend his sentence. For instance, the parties continue to dispute whether Welch's strong-arm robbery conviction qualifies as a violent felony under the elements clause of the Act, which would make Welch eligible for a 15-year sentence regardless of Johnson . On the present record, however, and in light of today's holding that Johnson is retroactive in cases on collateral review, reasonable jurists at least could debate whether Welch is entitled to relief. For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.