**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4100

_____

UNITED STATES OF AMERICA

v.

KENNETH PARNELL,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-12-cr-00418-006
District Judge: The Honorable Juan R. Sanchez

_____

Argued February 29, 2016

Before: McKEE, *Chief Judge*, SMITH, and HARDIMAN, *Circuit Judges*

(Opinion Filed:  June 13, 2016)

Eric B. Henson                    **[ARGUED]**
Robert A. Zauzmer
Virginia P. Pratter
Zane David Memeger
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
        *Counsel for Appellee*

Stephen P. Patrizio                **[ARGUED]**
Suite 1205
1500 John F. Kennedy Boulevard
Two Penn Center Plaza
Philadelphia, PA 19102
     *Counsel for Appellant*

————————————

OPINION[*]

————————————

SMITH, *Circuit Judge.*

This appeal stems from a stash-house robbery sting operation that took place in Philadelphia from June to July of 2012. Of the eight individuals caught in the operation, three pled guilty prior to trial.[1] Following their convictions in a joint trial, the remaining five,[2] including Appellant Kenneth Parnell, filed separate appeals, each contesting various issues relating to their convictions (and, for some,

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] These were Najee Murray, Lafayette Rawls, and Jamie Dales.

[2] Parnell's co-defendants at trial were Marlon Graham, Kareem Long, Frank Thompson, and Robert Lamar Whitfield. Separate opinions resolving each co-defendant's appeal were previously filed. *See United States v. Graham*, No. 14-3717; *United States v. Long*, No. 14-3703; *United States v. Thompson*, No. 14-4512; *United States v. Whitfield*, No. 14-3345.

their sentences).  For the reasons explained below, we will uphold Parnell's convictions and corresponding sentence.

## I.

In June of 2012, a confidential informant (CI) contacted Robert Lamar Whitfield and asked him for help getting in touch with a mutual acquaintance so that the CI could invite the acquaintance to rob a drug stash house.  Whitfield instead volunteered to take care of the robbery himself, claiming that he had significant experience robbing stash houses in the past.  The CI then put Whitfield in touch with the CI's "uncle," who turned out to be an undercover agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF).  Whitfield met with the agent on several occasions to discuss the robbery.  To facilitate the crime, Whitfield recruited others to join in the scheme, who in turn recruited others, including Parnell.

Plans came to a head on July 18 when Parnell and seven others met with the undercover agent in the parking lot of a Hilton Hotel where the agent once again told those present about the robbery, including that he expected ten kilograms of cocaine to be inside the stash house, and that he expected the house to be guarded by two men, one with a pistol and the other within reach of an assault-style rifle. The agent then made clear that any who wished to withdraw should do so at that time.  After no one expressed hesitation about the plan, the group proceeded to a

junkyard, presumably to check out a van that the agent was to have rented for use during the robbery. There, the group continued making preparations for the robbery, with several individuals arranging and inspecting firearms and distributing gloves to all present. At the undercover agent's signal, law enforcement officials swarmed the yard and arrested the group.

A grand jury returned an indictment charging each of the co-conspirators with multiple inchoate Hobbs Act robbery and drug distribution offenses, as well as with the crime of carrying a firearm during and in relation to a crime of violence or a drug trafficking crime. Additionally, Long, Thompson, and Dales were charged with being felons in possession of a firearm, though Long and Thompson were both acquitted at trial on this count. The jury convicted Parnell and the four other defendants on all counts for which they were mutually charged. Parnell was subsequently sentenced to 192 months in prison.[3] He then timely filed this appeal.[4]

---

[3] After his sentencing, Parnell filed a pro se motion to reduce his sentence pursuant to Amendment 782 to the Sentencing Guidelines. The government in its appellate brief notes that it has agreed that Parnell's sentence may be reduced to 182 months, but that the District Court has not yet ruled on the motion. Nothing in this opinion should be construed to affect the District Court's decision regarding Parnell's motion for a reduced sentence under Amendment 782.

[4] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

4

## II.

Parnell raises a number of issues for our consideration on appeal. First, he argues that there was insufficient evidence presented at trial to support his conviction for conspiracy to possess with intent to distribute cocaine. Second, he claims that the District Court committed two errors affecting his sentence. And finally, he claims that his sentencing enhancement under 18 U.S.C. § 924(c)(1)(A)(i) should be overturned in light of the Supreme Court's recent decision in *Welch v. United States*, 136 S. Ct. 1257 (2016).[5] We will discuss each argument in turn below.

## A.

Parnell claims that because the government failed to introduce any evidence at trial regarding the defendants' post-robbery plans for the stolen cocaine, no reasonable jury could have concluded that he entered into an agreement to possess

---

[5] Parnell raises several other issues that some or all of his co-defendants have also raised. First, he claims that the District Court should have dismissed the indictment – or, in the alternative, granted the defendants' motion for acquittal – because the fictitious stash-house robbery could not possibly "affect[] commerce" as required for conviction under the Hobbs Act. 18 U.S.C. § 1951(a). Second, Parnell argues that the District Court should have granted the motion for discovery to pursue a claim of selective enforcement. Third and finally, he claims the District Court erred in denying his and his co-defendants' motion to dismiss the indictment based on "outrageous government conduct." We rejected these or very similar arguments in *United States v. Whitfield*, No. 14-3345, and do so here for the same reasons expressed in that opinion.

the cocaine with intent to distribute.

We review a challenge to the sufficiency of the evidence "from the perspective of a reasonable juror." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc). We must uphold the jury's verdict "as long as it does not 'fall below the threshold of bare rationality.'" *Id.* (quoting *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012)). To convict someone of a conspiracy crime, the jury must find the following elements: "(1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." *Id.* at 425.

We conclude that the evidence of Parnell's guilt on the drug conspiracy charge was sufficient to support the jury's verdict. In order to prove that Parnell and his co-conspirators agreed to possess the cocaine with intent to distribute, "the government . . . need not show that the conspirators agreed on the details of their criminal scheme" so long as it can "show the 'essential nature of the plan.'" *United States v. Treadwell*, 760 F.2d 327, 336 (D.C. Cir. 1985) (quoting *Blumenthal v. United States*, 332 U.S. 539, 557 (1947)). The government put forth substantial evidence of the co-conspirators' plan to rob a stash house that they believed would contain at least ten kilograms of cocaine. The jury was therefore free to infer that the co-conspirators, including Parnell, intended to share in the proceeds of the distribution of that cocaine. *See Caraballo-Rodriguez*, 726 F.3d at

6

431 ("[The jury's] verdict can be supported by direct or circumstantial evidence, and reasonable inferences can be drawn from both types of evidence."); *see also, e.g., United States v. Vargas*, 945 F.2d 426, 428-29 (1st Cir. 1991) (holding that one-kilogram quantity of cocaine "was large enough to support a fair jury inference that it was not intended merely for personal consumption").

**B.**

Parnell also argues that the District Court committed two errors in calculating his Guidelines range. First, he claims that the District Court improperly attributed to him all ten kilograms of cocaine. Second, he contends that the District Court did not make the necessary factual findings to support his enhancement for obstruction of justice. We will address each argument in turn.

**1.**

Parnell argues that it was error for the District Court to attribute to him all ten kilograms of cocaine for purposes of calculating his sentencing range because there was no evidence presented at trial regarding how the cocaine would be distributed among the conspiracy participants after the robbery. We review for clear error the District Court's findings of fact regarding the relevant quantities of drugs attributable to Parnell. *See United States v. Perez*, 280 F.3d 318, 352 (3d Cir. 2002).

The Sentencing Guidelines instruct district courts to calculate the sentencing

range for drug trafficking offenses based on the quantity of drugs involved in the offense. *See* U.S.S.G. § 2D1.1(c). To calculate the amount of drugs attributable to a given defendant, district courts look to the defendant's "relevant conduct." *Perez*, 280 F.3d at 352. Relevant conduct in conspiracy cases includes "all acts . . . of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). This means that, in drug cases, "the defendant is accountable . . . [for] all quantities of contraband that were involved in the transactions carried out by other participants," so long as those transactions meet the three criteria spelled out above. *Id.* § 1B1.3 cmt. n.3(D). Also, in reverse-sting cases like this one, the quantity of drugs used to calculate the sentencing range is the quantity that the defendant agreed to rob, unless the defendant can demonstrate that he either "did not intend [to rob], or was not reasonably capable of [robbing], the agreed-upon quantity." *Id.* § 2D1.1 cmt. n.5. A district court making this quantity determination should apply the preponderance standard. *United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (en banc).

Applying these principles to Parnell, there was ample evidence in the record to support a finding that Parnell and his co-conspirators agreed to rob a stash house containing at least ten kilograms of cocaine. Even though Parnell surely would not

have ended up with all ten kilograms, the distribution of all ten kilograms by his co-conspirators would have been "within the scope of, [ ] in furtherance of," and "reasonably foreseeable in connection with [the jointly undertaken] criminal activity." U.S.S.G. § 1B1.3 cmt. n.3(D). Moreover, Parnell introduced no evidence suggesting that he did not actually intend to rob the full ten kilograms, or that he was not reasonably capable of robbing that amount. Therefore, the District Court did not err in attributing to Parnell the full ten-kilogram quantity of cocaine. *Cf. Perez*, 280 F.3d at 353-54 (no clear error where district court attributed to defendant full amount of drugs found in co-conspirator's apartment where defendant was present and providing security during distribution).

**2.**

Parnell claims that the District Court made inadequate factual findings to support an enhancement for obstruction of justice. The court was required to apply the preponderance standard in making factual findings to support the enhancement. *Grier*, 475 F.3d at 568. Again, we review for clear error the District Court's factual findings, and for abuse of discretion its application of the Guidelines to the facts. *United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013).

The Sentencing Guidelines instruct the sentencing court to assess a two-level enhancement if a defendant willfully obstructs, or attempts to obstruct, justice in the prosecution of his charged offenses. U.S.S.G. § 3C1.1. Obstructive conduct

under § 3C1.1 includes committing perjury, as well as "threatening, intimidating, or otherwise unlawfully influencing a . . . witness." *Id.* § 3C1.1 cmt. n.4(A)-(B).

The government claimed at sentencing that Parnell perjured himself at trial. For example, the government noted Parnell's testimony in which he denied making various statements that the government attributed to him and that could be heard on an audio recording of the group's meeting at the Hilton, even though the undercover agent testified at trial that he knew it was Parnell's voice because he was standing right next to Parnell during the meeting. The government also claimed that Parnell threatened Rawls, a cooperating co-conspirator, shouting out the street address of Rawls' family to all present in the court cellblock during a lunch break at trial.

The District Court explained at length why it found the obstruction enhancement appropriate, explicitly finding all the facts necessary to support the conclusion that Parnell perjured himself and that he threatened a witness. We will therefore uphold the District Court's application of the obstruction enhancement.

## C.

In *Johnson v. United States*, the Supreme Court held that the "residual clause" of 18 U.S.C. 924(e)(2)(B)(ii) was unconstitutionally vague. 135 S. Ct. 2551, 2563 (2015). After oral arguments in this appeal, the Supreme Court issued its opinion in *Welch v. United States*, which held that *Johnson* applies

retroactively. *See* 136 S. Ct. 1257, 1265 (2016). We then granted Parnell's motion to file supplemental briefing regarding the import, if any, of *Johnson* and *Welch* to his appeal. We also granted leave to the government to submit a supplemental brief in reply. After considering the parties' arguments, we will uphold the District Court's application of 18 U.S.C. § 924(c)(1)(A)(i) to Parnell.[6]

Section 924(c) imposes a five-year sentencing enhancement for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." *Id.* The statute defines "crime of violence" to mean any felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). Parnell claims that his Hobbs Act convictions do not fall within the meaning of subclause (A) above, and that because subclause (B) is similar to the residual clause struck down in *Johnson*, his sentence under § 924(c) must be overturned. We disagree.

---

[6] To the extent Parnell raises any other issues or arguments in his supplemental briefing, we decline to reach them.

Parnell's argument overlooks a crucial fact: section 924(c) imposes the enhancement on those who use a firearm "during and in relation to any crime of violence *or drug trafficking crime*." *Id.* § 924(c)(1)(A) (emphasis added). Based on the Official Jury Verdict Form in this case, we know that the jury found that Parnell carried a gun "during and in relation to" the drug trafficking crimes charged in the indictment. Thus, we need not (and do not) decide whether a conviction for Hobbs Act robbery falls within the meaning of the residual clause in § 924(c)(3)(B). We also see no need to determine whether this clause is constitutional in the wake of *Johnson* because *Johnson* does not call into question the statute's unambiguous definition of "drug trafficking crime." *See id.* § 924(c)(2).

**III.**

We will affirm the District Court's judgment and sentence as to Parnell.