******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# DALE KUKUCKA *v.* COMMISSIONER OF CORRECTION
## (AC 46059)

Elgo, Suarez and Clark, Js.

### *Syllabus*

The petitioner, who had been convicted, after a jury trial, of the crimes of strangulation in the first degree, sexual assault in the third degree, and assault in the third degree, sought a writ of habeas corpus, claiming that, pursuant to *State* v. *Dickson* (322 Conn. 410), his due process rights had been violated and that his trial and appellate counsel had rendered ineffective assistance. On his direct appeal from his underlying conviction, the petitioner had claimed, inter alia, that the trial court had improperly denied his motion to suppress in-court and out-of-court identifications of him made by a witness to the assault. *Dickson*, which was decided by our Supreme Court more than four months after the petitioner had filed his direct appeal, held, inter alia, that, in cases in which identity is an issue, in-court identifications that are not preceeded by a successful identification in a nonsuggestive procedure implicate due process principles. The petitioner's appellate counsel did not raise any claim predicated on *Dickson* in either his principal or reply briefs in the direct appeal. The respondent, the Commissioner of Correction, filed a return to the petition in which he raised a special defense of procedural default because the petitioner had failed to raise the *Dickson* claim on direct appeal. At the habeas trial in the present case, the habeas court heard testimony from the petitioner, his trial counsel, and a legal expert but not from the petitioner's appellate counsel. The court rendered judgment denying the petition for a writ of habeas corpus, and, on the granting of certification, the petitioner appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improperly determined that he failed to satisfy the cause and prejudice test set forth in *Reed* v. *Ross* (468 U.S. 1) to excuse his procedural default for failing to raise the due process claim during his criminal trial; the petitioner was unable to rely on *Dickson* to demonstrate cause and prejudice to overcome the respondent's special defense of procedural default, as our Supreme Court explicitly stated that *Dickson* may not be applied retroactively on collateral review.

2. The habeas court properly denied the petitioner's petition for a writ of habeas corpus: because the *Dickson* decision was released while the petitioner's direct appeal was pending, a *Dickson* claim was neither unknown nor sufficiently novel to excuse the petitioner's procedural default, and, in the absence of evidence to the contrary, this court presumed that the petitioner's appellate counsel made a tactical decision in deciding to forgo a *Dickson* claim during the direct appeal; moreover,

although the Supreme Court's decision in *Dickson* contained clear instructions on how to apply the new rule in pending appeals, indicating that the court anticipated the possibility of viable *Dickson* claims arising in cases that were pending on appeal at the time that *Dickson* was released, the petitioner failed to challenge the habeas court's adverse ruling on his claim of ineffective assistance of appellate counsel.

Argued November 13, 2023—officially released April 30, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, for the appellant (petitioner).

*Laurie N. Feldman*, assistant state's attorney, with whom, on the brief, was *Angela Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Dale Kukucka, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly denied his freestanding due process claim on the basis of procedural default. Specifically, he argues that the court erroneously concluded that the only way he could overcome procedural default was by showing ineffective assistance of appellate counsel, and, in so concluding, it improperly rejected his claim that he satisfied the cause and prejudice test set forth in *Reed* v. *Ross*, 468 U.S. 1, 13–15, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984). We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's claims. As a result of crimes that were committed on October 19, 2013, the petitioner was arrested, charged, and, following a jury trial, ultimately convicted of "strangulation in the first degree in violation of General Statutes § 53a-64aa (a) (1) (B), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), and assault in the third degree in violation of General Statutes § 53a-61 (a) (1)."[1] *State* v. *Kukucka*, 181 Conn. App. 329, 331, 186 A.3d 1171, cert. denied, 329 Conn. 905, 184 A.3d 1216 (2018). On February 17, 2016, the petitioner was sentenced to a total effective sentence of fifteen years of incarceration, execution suspended after ten years, followed by fifteen years of probation. From that judgment of conviction, the petitioner filed a direct appeal with this court on March 28, 2016. In his direct appeal, the petitioner claimed, in part, that the court had improperly "denied his motion to suppress the in-court and out-of-court identifications of him made by a witness to the assault." Id. On August 9, 2016, the Supreme Court decided *State* v. *Dickson*, 322 Conn. 410, 141 A.3d 810 (2016), cert. denied, 582 U.S. 922, 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017), which held, inter alia, that, "in cases in which identity is an issue, in-court identifications that are not preceded by a successful identification in a nonsuggestive identification procedure implicate due process principles . . . ." (Footnote omitted.) Id., 415. On November 8, 2016, and July 10, 2017, respectively, the petitioner's appellate counsel filed the principal and reply briefs in his direct

_____

[1] "Although the jury also found the defendant guilty of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a) and assault in the second degree in violation of General Statutes § 53a-60a (a) (1), the trial court did not enter judgment on those charges because they arose from the 'same incident' as the strangulation charge. See General Statutes § 53a-64aa (b)." *State* v. *Kukucka*, 181 Conn. App. 329, 331 n.1, 186 A.3d 1171, cert. denied, 329 Conn. 905, 184 A.3d 1216 (2018).

appeal. Although counsel alleged due process violations associated with the identification procedure used by the police, they did not raise any claim predicated on *Dickson*. This court ultimately affirmed the petitioner's conviction on April 24, 2018. *State* v. *Kukucka*, supra, 356.

On August 22, 2017, the petitioner filed a petition for a writ of habeas corpus. On February 2, 2021, the petitioner filed the operative amended petition, which asserted three counts. Count one alleged a due process violation under *Dickson*, count two alleged ineffective assistance of trial counsel, and count three alleged ineffective assistance of appellate counsel. On March 3, 2021, the respondent, the Commissioner of Correction, filed a return in which he claimed that count one of the operative petition was procedurally defaulted because the petitioner failed to raise the *Dickson* claim on direct appeal.[2] The respondent also relied on the fact that *Dickson* did not apply retroactively. In his reply to the return, the petitioner argued that "[a]ppellate counsel's ineffective assistance of counsel . . . as described in count three . . . caused [the] petitioner not to raise this claim in his direct appeal," and that the timing of *Dickson* "caused [the petitioner] to forgo a viable suppression motion and appellate claim pursuant to *Dickson* in all prior litigation relating to the charges and conviction . . . ."

On May 16, 2022, a trial on the petitioner's operative amended petition for a writ of habeas corpus was held. The court heard testimony from the petitioner, the petitioner's criminal trial counsel, and a legal expert. No other witnesses were presented. In its October 7, 2022 memorandum of decision, the court concluded, with

---

[2] In his return, the respondent additionally raised the issue of procedural default for failure to raise the *Dickson* claim during trial. However, that argument was abandoned in the respondent's appellate brief.

respect to the alleged due process violation pursuant to *Dickson*, "the petitioner alleges ineffective assistance of appellate counsel as the cause and prejudice [excusing procedural default], a claim already alleged in count three . . . . The due process claim in count one need not be separately addressed because it is subsumed within the claim in count three." The court then held that the petitioner had failed to prove ineffective assistance of either trial or appellate counsel. Specifically, as to the claim of ineffective assistance of appellate counsel, the court stated that "the petitioner alleges that [appellate counsel] failed to: identify, raise, litigate, and/or brief a due process claim under *State* v. *Dickson*, [supra, 322 Conn. 410]," yet, "[n]either appellate counsel testified and, therefore, it is unknown how they selected issues to raise on appeal. This court must presume in the absence of evidence to the contrary that counsel were . . . reasonably competent." Accordingly, the court denied the amended petition for a writ of habeas corpus and thereafter granted the petitioner's petition for certification to appeal. This appeal followed.

On appeal, the petitioner does not challenge the court's conclusion that he failed to establish ineffective assistance of trial or appellate counsel. Rather, the petitioner claims that the court improperly denied count one of his amended petition because the "court failed to realize that the petitioner had pleaded and argued a second form of cause and prejudice: the unavailability of the legal basis for the claim at the time of [the criminal] trial." Second, as to the failure to raise the *Dickson* claim during the direct appeal, the petitioner argues that, because *Dickson* was decided after the direct appeal was filed for his criminal conviction, and because *Dickson* implicated a due process violation applicable to his case,[3] the timing of the release of the

---

[3] We do not reach the merits of whether *Dickson* applies to the petitioner's purported due process claim. We do note, however, that *Dickson*'s requirement for a prescreening procedure applies to "in-court identifications that

*Dickson* decision independently constituted cause and prejudice sufficient to overcome the defense of procedural default for failing to raise the claim during the direct appeal. We are not persuaded.

As an initial matter, a habeas court's conclusion that a petitioner's claim is barred by the procedural default doctrine involves a question of law over which we exercise plenary review. See *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009); *McCarthy* v. *Commissioner of Correction*, 192 Conn. App. 797, 810, 218 A.3d 638 (2019).

Under the procedural default doctrine, "a claimant may not raise, in a collateral proceeding, claims that he could have made at trial or on direct appeal in the original proceeding and that if the state, in response, alleges that a claimant should be procedurally defaulted from now making the claim, the claimant bears the burden of demonstrating good cause for having failed to raise the claim directly, and he must show that he suffered actual prejudice as a result of this excusable failure." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 852, 97 A.3d 986 (2014), aff'd, 321 Conn. 56, 136 A.3d 596 (2016). "Although ineffective assistance of counsel . . . is the most commonly asserted basis for cause to excuse procedural default . . . it is not

are not preceded by a successful identification in a nonsuggestive identification procedure . . . ." *State* v. *Dickson*, supra, 322 Conn. 415. We also note that, in resolving the petitioner's direct appeal, in which he claimed a due process violation based on the admission of out-of-court and in-court identification evidence, this court stated that, "[e]ven if we were to assume that the identification procedure was suggestive, we conclude that given the public safety concerns and the immediate need to apprehend the assailant, the [trial] court properly found that the procedure was necessary due to exigent circumstances." *State* v. *Kukucka*, supra, 181 Conn. App. 355. Moreover, after a careful review of the evidence in the record, this court upheld the trial court's determination that the out-of-court identification of the petitioner was reliable on the basis of the numerous instances in which the witness had observed the petitioner on the day of the incident as well as the face-to-face altercation between them. Id., 355–56.

the exclusive basis." (Citation omitted.) *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 26, 272 A.3d 169 (2022). "[T]he cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. . . . [T]he failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met." *Reed* v. *Ross*, supra, 468 U.S. 14.

The petitioner is correct insofar that it is possible to show cause independent of an ineffective assistance of counsel claim. As highlighted in *Reed*, when a constitutional issue is not raised by competent counsel because it is "reasonably unknown" to counsel, as opposed to being an intentional strategic decision to not raise the claim, then cause may exist to excuse the procedural default. Id. The two issues in this case thus may be distilled to whether (1) *Dickson* may be applied retroactively to allow a collateral review of claims where judgment has been rendered and (2) the timing of the *Dickson* decision—which was officially released after the petitioner filed his direct appeal but before any briefs were filed and before oral arguments—satisfies the cause requirement under *Reed* because the due process claim created by *Dickson* was "reasonably unknown" to appellate counsel.

I

The petitioner claims that *Dickson* implicates a due process claim relevant to his conviction, and, because *Dickson*'s holding did not change the state of the law until after his conviction, there is cause and prejudice under *Reed* to excuse the procedural default for failing to raise the due process claim during his criminal trial. We disagree.

In *Reed*, Daniel Ross had been convicted following a jury trial in which the court had charged the jury with

instructions that had been in place for more than 100 years, and, on appeal, Ross' attorney did not contest the propriety of those instructions. Id., 5–7. Six years after the conclusion of Ross' direct appeal, the United States Supreme Court, in *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), overturned its long-standing precedent, effectively ruling that the jury instructions that were used during Ross' trial were unconstitutional. See *Reed* v. *Ross*, supra, 468 U.S. 3, 7. "Two years later, *Hankerson* v. *North Carolina*, 432 U.S. 233, 97 S. Ct. 2339, 53 L. Ed. 2d 306 (1977), held that *Mullaney* was to have retroactive application." *Reed* v. *Ross*, supra, 3. "Ross challenged the jury instructions for the first time in 1977, shortly after [the United States Supreme Court] decided *Hankerson*." Id., 7. The court noted that, prior to Ross' direct appeal, only two cases indirectly departed from the well settled legal precedent that the then existing jury instructions were constitutional. Id., 18–19. The court stated that, "[b]ecause these [two] cases provided only indirect support for Ross' claim, and because they were the only cases that would have supported Ross' claim at all, we cannot conclude that they provided a reasonable basis upon which Ross could have realistically appealed his conviction." Id., 19. The court stated that it could "confidently assume" the reason Ross failed to challenge "the constitutionality of [the jury] instructions . . . [on appeal] was because they were sanctioned by a century of North Carolina law and because *Mullaney* was yet six years away." Id., 7. The court held that "Ross' claim was sufficiently novel . . . to excuse his attorney's failure to raise the . . . issue" during his direct appeal and affirmed the decision of the United States Court of Appeals for the Fourth Circuit to retroactively apply *Mullaney* to Ross' claim. Id., 20.

Relying on *Reed*, the petitioner argues that the due process claim on which he relies—that later became

available under our Supreme Court's decision in *Dickson*—was not legally available to counsel at the time of his criminal trial. The petitioner argues that, "where a jurisdiction's highest court overrules its own prior precedent on a constitutional matter, there is cause and prejudice to excuse a procedural default." However, in *Reed*, it was not the change in the law contained in *Mullaney*, alone, that permitted Ross to appeal his conviction. It was only after *Hankerson*, in which the United States Supreme Court held that *Mullaney* could be applied retroactively, that Ross was permitted to challenge his conviction.

Our Supreme Court has made it clear that *Dickson* is not to be applied retroactively. The court explicitly stated that "[t]he new rule would not apply . . . on collateral review." *State* v. *Dickson*, supra, 322 Conn. 451 n.34; see also *Tatum* v. *Commissioner of Correction*, 211 Conn. App. 42, 60–61, 272 A.3d 218, cert. granted, 343 Conn. 932, 276 A.3d 975 (2022).[4] Because *Dickson* may not be applied retroactively on collateral review, the petitioner may not challenge his conviction on the basis of the new law contained in the *Dickson* decision. Accordingly, the petitioner is unable to rely on *Dickson* to demonstrate cause and prejudice to overcome the respondent's special defense of procedural default.

## II

The petitioner nevertheless claims that, because the *Dickson* decision was released while his direct appeal was pending, cause and prejudice exists to excuse the procedural default for failure to raise the claim during

---

[4] We note that the petitioner in *Tatum* v. *Commissioner of Correction*, supra, 211 Conn. App. 42, has appealed this court's decision, which is currently pending before our Supreme Court. The certified question in that case is whether the habeas petition in question was properly dismissed on the ground that *Dickson* "did not apply retroactively to the petitioner's case on collateral review?" *Tatum* v. *Commissioner of Correction*, 343 Conn. 932, 276 A.3d 975 (2022).

the appeal because the issue was "reasonably unknown" and "sufficiently novel" to competent counsel. We disagree.

It is undisputed that the petitioner's case was pending on appeal at the time that the *Dickson* decision was released. The court recognized that, "in pending *appeals* involving this issue, the suggestive in-court identification has already occurred." (Emphasis in original.) *State v. Dickson*, supra, 322 Conn. 452. The court then carefully provided instruction on how to apply the new rule to pending appeals in which the issue of suggestive in-court identifications has been raised. Id.; see also *State v. Collymore*, 334 Conn. 431, 479, 223 A.3d 1 ("[b]ecause . . . it was too late to prescreen first time in-court identifications that already occurred in pending cases, we provided a road map for how pending appeals should be handled"), cert. denied,     U.S.    , 141 S. Ct. 433, 208 L. Ed. 2d 129 (2020). This clearly indicates that, in its pronouncement that its holding must be applied prospectively, the court anticipated the possibility of viable *Dickson* claims arising in cases that were pending on appeal at the time that *Dickson* was released. Because the *Dickson* decision was released while the petitioner's appeal was pending, a *Dickson* claim was neither unknown nor sufficiently novel to excuse the petitioner's procedural default.

Notwithstanding the clear instructions provided by our Supreme Court in *Dickson* regarding pending appeals, the petitioner relies on *United States* v. *Garcia*, 811 Fed. Appx. 472 (10th Cir. 2020), stating in his reply brief that the case stands for the premise that "a change in the law that occurs during a proceeding excuses default at that same proceeding."[5] Such a broad reading

---

[5] The petitioner also cites a case from the United States District Court for the District of Columbia for the same premise. That decision is not binding on this court, and we find it unpersuasive because the change in law in that case was followed by a subsequent United States Supreme Court decision holding that the change was retroactive.

cannot reasonably be taken from the *Garcia* decision. In *Garcia*, a change in law took place "only eighteen days before [the] court issued its decision in [Pedro Garcia's] direct appeal . . . ." *United States* v. *Garcia,* supra, 479. However, the court clearly stated that "the source of the constitutional principle relevant to [Garcia's argument] is not found in [that case] but in [a more recent case], which was decided *well after Garcia's direct appeal was final.* Indeed, given that it is [the more recent case] that cements the viability of Garcia's legal theory . . . there is cause to excuse Garcia from not raising this claim at trial or on direct appeal." (Citation omitted; emphasis added.) Id., 480.

This is clearly in contrast with the present case. In *Dickson*, our Supreme Court accounted for how potential *Dickson* claims can be viably raised in pending

The petitioner in *Sorto* v. *United States*, Docket No. 08-167-4 (RJL) (D. D.C. February 24, 2022), appealed from his judgment of conviction rendered in a consolidated appeal with his codefendants, with briefs filed on May 16, 2014, and March 3, 2015. The subsequent decision affirming the convictions was issued on November 24, 2015. See *United States* v. *Cordova*, 806 F.3d 1085 (D.C. Cir. 2015) and related filings. On June 26, 2015, nearly five months before Melvin Sorto's direct appeal was affirmed, the United States Supreme Court decided *Johnson* v. *United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), which adopted a new constitutional rule relevant to Sorto's conviction and appeal. Id.; *Sorto* v. *United States*, supra. The District Court ultimately found cause to excuse Sorto's procedural default. Id.

In the present case, the petitioner asserts that "*Johnson* constituted cause for the procedural default" for Sorto "not rais[ing] a *Johnson* issue on direct appeal . . . ." The petitioner fails to acknowledge, however, that "Sorto's argument was based on *two* Supreme Court decisions." (Emphasis added.) *Sorto* v. *United States*, supra, United States District Court, Docket No. 08-167-4. The second case, *Welch* v. *United States*, 578 U.S. 120, 136 S. Ct. 1257, 194 L. Ed. 2d 387 (2016), was decided on April 18, 2016, almost five months *after* Sorto's conviction was affirmed on direct appeal. "[I]n *Welch* v. *United States*, the Supreme Court held . . . that *Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." (Internal quotation marks omitted.) *Sorto* v. *United States*, supra. It was only after *Welch* was decided that *Johnson* was applied retroactively on collateral review of Sorto's conviction. Thus, *Johnson* on its own did not establish an independent basis to excuse Sorto's procedural default. *Sorto* is therefore inapposite to the present case.

appeals. Moreover, *Dickson* was decided after the direct appeal was filed, but three months *before* the petitioner's first brief was filed, eleven months before the petitioner's reply brief was filed, fourteen months before oral arguments, and more than one and one-half years before the petitioner's direct appeal was affirmed. For that reason, the assertion that the constitutional issue contained in *Dickson* was "reasonably unknown" and "sufficiently novel" to competent counsel during the petitioner's direct appeal is untenable. Even if we were to assume that the petitioner's appellate counsel would have considered a *Dickson* claim strategically advantageous, he had ample time to raise it between August 9, 2016, when the *Dickson* decision was released, and April 24, 2018, when the petitioner's direct appeal was affirmed. See *State* v. *Dickson*, supra, 322 Conn. 410; *State* v. *Kukucka*, supra, 181 Conn. App. 329.

Mindful of the clear instructions contained in the *Dickson* decision indicating that such claims could be raised and litigated in those cases in which appeals were pending, it bears repeating that the petitioner does not challenge the habeas court's adverse ruling on his claim of ineffective assistance of appellate counsel. In the absence of evidence to the contrary, this court must presume that appellate counsel made a tactical decision in deciding to forgo a *Dickson* claim during the direct appeal. "[C]ounsel may not make a tactical decision to forgo a procedural opportunity . . . to raise an issue on appeal . . . and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy . . . . Procedural defaults of this nature are, therefore, 'inexcusable' . . . and cannot qualify as 'cause' for purposes of . . . habeas corpus review." (Citation omitted.) *Reed* v. *Ross*, supra, 468 U.S. 14. We therefore conclude that the court properly denied the petitioner's petition for a writ of habeas corpus.

The judgment is affirmed.

In this decision the other judges concurred.