FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARK HOPKINS,

    Defendant - Appellant.

No. 18-2046

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. 2:17-CV-00419-MCA and 2:09-CR-00863-MCA-1)**
_____

Jason Bowles of Bowles Law Firm, Albuquerque, New Mexico, for Defendant - Appellant.

C. Paige Messec, Assistant U.S. Attorney (John C. Anderson, U.S. Attorney, with her on the brief), Albuquerque, New Mexico, for the Plaintiff - Appellee.
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Dr. Mark Hopkins filed a motion under 28 U.S.C. § 2255 to vacate his 2010 conviction and sentence for tax evasion. Before his trial, the district court ordered him to make monthly payments into the court's registry to ensure he was complying with federal tax law. Several months later, Dr. Hopkins requested release of the funds so he and his

wife, who was being tried with him, could pay their attorneys. The district court ordered the funds' return. But then the IRS filed notice of a lien on the funds, prompting the court clerk to file an interpleader action. The district court reversed course. Dr. Hopkins never received the funds. He and his wife were convicted in a jury trial.

Dr. Hopkins filed his § 2255 motion on March 29, 2017, following the Supreme Court's decision in *Luis v. United States*, 136 S. Ct. 1083 (2016). *Luis* recognized a defendant's Sixth Amendment right to use untainted assets to hire counsel of choice.[1] Because his conviction became final in 2013, however, Dr. Hopkins's motion fell outside the usual one-year time limit set by § 2255(f)(1). He sought to avoid that time bar by relying on § 2255(f)(3), arguing that *Luis* created a "newly recognized" right that would be "retroactively applicable to cases on collateral review." The district court held that *Luis* did not create such a right, dismissed the motion, and granted a certificate of appealability. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), (c)(1), we affirm.

---

[1] *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 147-48 (2006) ("The right to select counsel of one's choice . . . has been regarded as the root meaning of the constitutional guarantee [of the Sixth Amendment].").

# I.  BACKGROUND

## A.  *Trial and Direct Appeal*

### 1.  **Indictment and Pretrial Proceedings**

Dr. Hopkins and his wife Sharon Hopkins were tax protestors.  They failed to pay income taxes for more than 13 years.  In April 2009, a grand jury indicted them on one count of conspiracy to defraud the IRS, in violation of 18 U.S.C. § 371, and seven counts of tax evasion, in violation of 26 U.S.C. § 7201.  The Government moved to revoke Dr. Hopkins's pretrial release, arguing that he was not making quarterly income tax payments required by 26 U.S.C. § 6654.  At a hearing on the motion, Dr. Hopkins agreed to make tax payments to an escrow account in the court registry.  Between October 2009 and June 2010, he paid approximately $130,000 into the registry.

In June 2010, Dr. and Ms. Hopkins moved to end the required payments and have the funds returned.  They asserted the payments had "drain[ed] their ability to pay" their lawyers, "thereby causing them to ultimately lose their constitutionally protected right of choice of counsel" under the Sixth Amendment.  Aplt. App. at 121.  The district court ordered the funds be returned to the Hopkinses.  But before the funds' release, the IRS served notice of a federal tax lien on the court clerk.  The clerk then filed an interpleader action for clarification as to the proper distribution of the funds.  In response, the district court denied the Hopkinses' emergency motion to release the funds.  Ms. Hopkins's

attorney—who, the Hopkinses claim, "was an integral part of the defense team" for both of them, Aplt. Reply Br. at 8—withdrew on July 15, 2010.[2]

## 2. Conviction and Sentence

A jury convicted the Hopkinses on all counts. The district court sentenced Dr. Hopkins to 120 months in prison and three years of supervised release. It ordered the Hopkinses to pay more than $1,700,000 in restitution.[3]

## 3. Direct Appeal

The Hopkinses filed a joint appeal, and this court affirmed their convictions and sentences. *See United States v. Hopkins*, 509 F. App'x 765, 767 (10th Cir. 2013) (unpublished). Although only Ms. Hopkins asserted a deprivation of the right to counsel of choice on appeal, *see id.* at 770,[4] our treatment of that issue on her appeal provides context for our consideration of Dr. Hopkins's § 2255 appeal.

---

[2] The Government contends that Dr. Hopkins's counsel of choice represented him throughout the trial. The district court's docket indicates that after Dr. Hopkins retained counsel and his court-appointed attorney withdrew in June 2009, his retained counsel remained counsel of record throughout the trial. When the district court considered the § 2255 motion, it did not consider whether Dr. Hopkins had been deprived of his right to counsel of choice at trial. Because we conclude Dr. Hopkins's motion was untimely, we do not reach this issue.

[3] Ms. Hopkins was sentenced to 97 months followed by three years of supervised release. *See United States v. Hopkins*, 509 F. App'x 765, 770 (10th Cir. 2013) (unpublished).

[4] Dr. Hopkins's only argument on appeal was that the "district court erroneously applied the offense level enhancement for obstruction of justice pursuant to [United States Sentencing Guidelines] § 3C1.1." *Hopkins*, 509 F. App'x at 780. Because we affirm the district court's dismissal of Dr. Hopkins's § 2255 motion on timeliness

4

In deciding the right to counsel of choice issue, we relied on *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989), and *United States v. Monsanto*, 491 U.S. 600 (1989). In *Caplin & Drysdale*, the defendant was charged with running a large-scale drug importation and distribution business. After he pled guilty and was ordered to forfeit the proceeds of his crimes under 21 U.S.C. § 853(a),[5] his attorney petitioned to collect his legal fees from the forfeited property. *Id*. at 621. The Supreme Court held the attorney could not recover fees out of the forfeited funds. *Id.* at 622. It explained that title to forfeitable assets vests in the government "at the time of the criminal act giving rise to forfeiture," *id.* at 627, and in light of that vesting, "a defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice," *id.* at 626.

---

grounds, we do not address any potential ramifications of his failure to raise a Sixth Amendment argument on direct appeal.

[5] Title 21 U.S.C. § 853(a) allows for forfeiture of the proceeds of certain drug offenses. It requires that a defendant convicted of the relevant offenses forfeit (1) "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation" or (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." *Id.* Section 853(c) states that "[a]ll right, title, and interest in property described in [§ 853(a)] vests in the United States upon the commission of the act giving rise to forfeiture under this section." *Id.* § 853(c).

5

In *Monsanto*, decided the same day, the Supreme Court extended *Caplin & Drysdale*'s holding to authorize freezing of a defendant's forfeitable assets before conviction to prevent dissipation, even when doing so prevents the defendant from paying counsel.  491 U.S. at 602.  The indictment alleged that the defendant had obtained a house, an apartment, and $35,000 in cash through drug trafficking.  *Id.*  The government obtained an order freezing those assets under 21 U.S.C. § 853(a).  *Id.* at 603.  Pointing to *Caplin & Drysdale*, the Court held that the order did not violate the defendant's right to obtain counsel of choice.  It said, "[I]f the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial."  *Id.* at 616.

In the Hopkinses' appeal, we concluded that these cases foreclosed Ms. Hopkins's Sixth Amendment challenge.  "[N]either the Fifth nor the Sixth Amendment to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees."  *Hopkins*, 509 F. App'x at 773 n.6 (quoting *Monsanto*, 491 U.S. at 614).  Just as the government had rightful possession over the forfeited property in *Caplin & Drysdale*, the IRS had been "within its rights to file the levy [over the registry funds], which limited Sharon Hopkins's right to the same funds."  *Id.* at 773.  Accordingly, the district court's refusal to return the $130,000 to Dr. and Ms. Hopkins did not violate the Sixth Amendment right to counsel of choice.  *Id.* at 773, 776.

Following this court's decision, Dr. Hopkins did not seek certiorari from the United States Supreme Court. His conviction thus became final no later than June 11, 2013. *See Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012) (explaining that under § 2255(f)(1), a criminal conviction becomes final when the Supreme Court affirms the conviction or denies certiorari, or, if review by the Supreme Court is not sought, when the time for filing a certiorari petition expires); Sup. Ct. R. 13(1) (2017) (providing that a certiorari petition is timely if filed within 90 days of entry of judgment).

## B. **Luis v. United States**

On March 30, 2016, nearly three years after Dr. Hopkins's conviction became final, the Supreme Court decided *Luis v. United States*, 136 S. Ct. 1083 (2016). In that case, Sila Luis was charged with health care fraud. *Id.* at 1087. At the government's request, and pursuant to 18 U.S.C. § 1345(a)(2), the district court prohibited Ms. Luis from "dissipating, or otherwise disposing of . . . assets . . . up to the equivalent value of the proceeds" of the crime. *Id.* at 1088. The court's order forbade her from spending not just the proceeds of the crime, but also innocently-obtained property of the same value. *Id.*[6] She therefore could not use untainted funds to hire an attorney. Ms. Luis argued this restriction violated her right to counsel of her choice.

---

[6] Section 1345(a)(2) allows for pretrial freezing of property "obtained as a result of" certain healthcare or banking violations, property "traceable" to the crime, and other "property of equivalent value." 18 U.S.C. § 1345(a)(2).

The Supreme Court agreed. Observing that "[t]he Sixth Amendment right to counsel grants a defendant 'a fair opportunity to secure counsel of his own choice,'" *id.* at 1085 (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)), Justice Breyer said in the plurality opinion that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Id.* at 1088.[7] It distinguished *Caplin & Drysdale* and *Monsanto*, both of which concerned a defendant's right to pay counsel using assets linked to the crime. The plurality explained, "The relevant difference consists of the fact that the property here is untainted; *i.e.*, it belongs to [Ms. Luis], pure and simple." *Id.* at 1090 ("[B]oth *Caplin & Drysdale* and *Monsanto* relied critically upon the fact that the property at issue was 'tainted.'"). The difference between tainted and untainted assets was "the difference between what is yours and what is mine." *Id.* at 1091. The government had a property interest in the defendants' crime-tainted forfeitable assets in *Caplin & Drysdale* and *Monsanto*. But in Ms. Luis's case, the court's order extended to freezing "untainted" assets that were not tied to her crime. And even if these assets may have been subject to forfeiture upon her conviction, the government's contingent interest in the untainted assets did not outweigh Ms. Luis's right to use the assets to obtain counsel of her choice. *Id.* at 1092.

---

[7] Justice Thomas concurred in the court's judgment because "constitutional rights necessarily protect the prerequisites for their exercise," such that "[w]ithout constitutional protection for at least some of a defendant's assets, the Government could nullify the right to counsel of choice." *Luis*, 136 S. Ct. at 1096, 1098 (Thomas, J., concurring). He noted that the Sixth Amendment right to counsel originally encompassed "only the right to hire counsel of choice." *Id.* at 1097.

The *Luis* decision drew two dissenting opinions. Justice Kennedy, joined by Justice Alito, called the Court's holding "unprecedented," adding that the decision "ignore[d] this Court's precedents and distort[ed] the Sixth Amendment right to counsel." *Id.* at 1103 (Kennedy, J., dissenting). He reasoned that *Caplin & Drysdale* and *Monsanto* "make clear that a defendant has no Sixth Amendment right to spend forfeitable assets (or assets that will be forfeitable) on an attorney." *Id.* Those cases involved assets that "belong[ed] to the defendant," just like Ms. Luis's assets, but because there was probable cause to believe the assets would be forfeited upon conviction, they could be seized or frozen before trial. *Id.* at 1106. Accordingly, Justice Kennedy reasoned, the plurality's distinction between "tainted" and "untainted" assets lacked support. In a separate dissent, Justice Kagan expressed doubts about the correctness of *Monsanto*'s holding, but concluded that it should control the case. *Id.* at 1112 (Kagan, J., dissenting).

C. ***District Court § 2255 Proceedings***

1. **Section 2255(f) Statute of Limitations**

Section 2255(f) imposes a one-year statute of limitations on a prisoner filing a § 2255 motion. As relevant to this case, the one-year period runs from "the latest of . . . the date on which the judgment of conviction becomes final," *id.* § 2255(f)(1), or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," *id.* § 2255(f)(3).

2. **Dr. Hopkins's § 2255 motion**

On March 29, 2017,[8] Dr. Hopkins filed a pro se motion to vacate his conviction under 28 U.S.C. § 2255.[9] He argued that the *Luis* decision was "a substantive change in the law" that entitled him to file the motion more than one year after his conviction had become final. Aplt. App. at 387. He contended that the funds he was ordered to pay into the registry were "innocent assets . . . needed to pay counsel of choice." *Id.* at 392. Under *Luis*, he said, the district court's refusal to release the registry funds amounted to "unconstitutional and impermissible restraint of [his] innocent assets," in violation of his Sixth Amendment right to counsel of choice. *Id.* at 400. The Government did not file a response and the district court did not order it to do so.

---

[8] The *Luis* decision was handed down on March 30, 2016. Dr. Hopkins's motion was filed with the district court on April 6, 2017. Because Dr. Hopkins was a prisoner and filed his motion pro se, he may rely on the "prison mailbox rule," which makes the date on which he presented his motion to prison officials for mailing the filing date for timeliness purposes. *See Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005). The record shows he gave his motion to prison officials on March 29, 2017. He therefore filed his motion within one year of the Supreme Court's decision in *Luis*. *See* 28 U.S.C. § 2255(f)(3).

[9] Although Dr. and Ms. Hopkins were indicted and tried together, Ms. Hopkins is not a party to this § 2255 proceeding. Following the *Luis* decision, Ms. Hopkins filed a motion to dismiss the indictment, which the district court construed as a § 2255 motion and dismissed on the same grounds as it dismissed Dr. Hopkins's motion. *See United States v. Hopkins*, No. 2:09-CR-00863 MCA, 2018 WL 550594 at *3 (D.N.M. Jan. 23, 2018). Ms. Hopkins did not appeal that decision.

3. **District Court Ruling**

The district court dismissed Dr. Hopkins's § 2255 motion as untimely. *United States v. Hopkins*, No. 2:09-CR-00863 MCA, 2018 WL 1393780, at *2 (D.N.M. Mar. 19, 2018). It explained that to obtain relief, Dr. Hopkins needed to show the *Luis* decision recognized a new right that applies retroactively. *Id.*

It is not clear whether the district court dismissed Dr. Hopkins's motion because *Luis* did not recognize a new right or because that right was not retroactively applicable to Dr. Hopkins's collateral proceeding. The court's order contains statements pointing in both directions. Immediately after setting forth the test for whether a Supreme Court decision announces a new right, the district court stated that "*Luis* was based primarily on the application of two existing cases," *Caplin & Drysdale* and *Monsanto*, suggesting it did not view the *Luis* rule as new. *Id.* But in the following sentence the court stated that "courts have consistently held that *Luis* is not retroactively applicable on review." *Id.* The district court also granted a certificate of appealability because this court has not previously addressed *Luis*'s retroactivity. *Id.*

## II. **DISCUSSION**

The single issue on appeal is whether Dr. Hopkins's motion was time-barred under the one-year time limit in 28 U.S.C. § 2255(f). We can resolve this issue by deciding a pure question of law: whether *Luis* applies retroactively. Because we conclude it does not, Dr. Hopkins's motion is untimely.

11

## A. *Standard of Review*

"[W]e review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Miller*, 868 F.3d 1182, 1186 (10th Cir. 2017) (quotations omitted).

## B. *Analysis*

A § 2255 motion typically must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). But it may be brought after that time period if the movant files the motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). Our analysis focuses on the application of § 2255(f)(3).

### 1. Timeliness Waiver

Dr. Hopkins argues that the Government may not challenge the timeliness of his § 2255 motion because it did not file a response to the motion in the district court. We disagree.

In a § 2255 proceeding, "[t]he respondent is not required to answer the motion unless a judge so orders." Rule 5(a), Rules Governing Section 2255 Proceedings in the U.S. District Courts. Under Rule 5(a), the Government was not required to file a response to Dr. Hopkins's motion absent an order from the district court. Because the district court never ordered a response, the first time the Government was required to

address Dr. Hopkins's arguments was in this appeal. *See United States v. Lopez-Aguilar*, 912 F.3d 1327, 1329 (10th Cir. 2019). The Government's failure to raise its timeliness defense in the district court—where it did not file a response and the court did not order it to do so—does not preclude it from arguing timeliness on appeal. *See id.* ("If the district court did not order the government to respond to the § 2255 motion, the government could raise the [argument seeking enforcement of the defendant's appeal waiver] for the first time in the appeal.").[10]

---

[10] The parties do not address Rule 5(a). But even as to the argument Dr. Hopkins makes, the Government did not "intentionally relinquish[]" its timeliness defense in any filing. *Wheeler v. Falk*, 556 F. App'x 734, 734 (10th Cir. 2014) (unpublished); *see* Aplt. Reply Br. at 13-14. Courts may consider the timeliness of a § 2255 motion sua sponte unless the government affirmatively waives the issue. *Wood v. Milyard*, 566 U.S. 463, 473-74 (2012) (holding that the government had waived a timeliness defense by stating to the district court it "[would] not challenge, but [was] not conceding" the motion's timeliness); *see also United States v. Mulay*, 725 F. App'x 639, 643-44 (10th Cir. 2018) (unpublished) (holding that the government waived a timeliness objection by failing to raise it in the district court and stating on appeal that timeliness was "not implicated").

As discussed above, when the Government filed its brief in this court, it raised a timeliness defense. Unlike in *Wood* and *Mulay*, the Government never suggested it was not contesting the timeliness of Dr. Hopkins's motion. The Government thus has not "intentionally relinquished" its argument that Dr. Hopkins's motion was untimely. *Wheeler*, 556 F. App'x at 734.

Although not precedential, we find the reasoning of the unpublished decisions cited in this opinion to be instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

2. **Timeliness of Dr. Hopkins's § 2255 Motion**

    a. *Legal background*

To determine whether Dr. Hopkins's motion was timely under § 2255(f)(3), we must evaluate whether *Luis* recognized a new right that is retroactively applicable on collateral review. When, as in *Luis*, the Supreme Court has not said whether a right is new or retroactive, we look for guidance to *Teague v. Lane*, 489 U.S. 288 (1989).[11]

*Teague* provides guidance on (1) whether a Supreme Court decision recognized a new right and (2) whether the right is retroactively applicable on collateral review. *See id.* at 301, 311. We follow this guidance when evaluating timeliness under § 2255(f)(3). *United States v. Chang Hong*, 671 F.3d 1147, 1150-51 (10th Cir. 2011); *see United States v. Taylor*, 672 F. App'x 860, 864 (10th Cir. 2016) (unpublished) (applying *Teague* to evaluate retroactivity under § 2255(f)(3)). We address both considerations below.

    i. <u>Newly recognized rights under § 2255</u>

As other courts have done, we have used the words "right" and "rule" interchangeably in discussing whether a Supreme Court decision restarts the one-year statute of limitations under § 2255(f)(3). *See United States v. Greer*, 881 F.3d 1241, 1244-45 (10th Cir. 2018); *United States v. Snyder*, 871 F.3d 1122, 1125-26 (10th Cir. 2017); *see also Beeman v. United States*, 871 F.3d 1215, 1219 (11th Cir. 2017).

---

[11] Justice O'Connor wrote *Teague*'s plurality opinion, which a majority of the Court adopted in *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989).

Under *Teague*, a rule is not "new" if it was "dictated by precedent existing at the time the defendant's conviction became final," 489 U.S. at 301, is "apparent to all reasonable jurists," *Chaidez v. United States*, 568 U.S. 342, 347 (quotations omitted), or is "merely an application" of an existing right or principle, *id.* at 348. Conversely, a right is "newly recognized" for § 2255(f)(3) purposes if it is "not dictated by precedent." *Greer*, 881 F.3d at 1245 (quotations omitted).

A Supreme Court decision recognizing a right over a dissent is less likely to be dictated by precedent.[12] For example, in *Chang Hong*, we held that the Supreme Court announced a new rule in *Padilla v. Kentucky*, 559 U.S. 356 (2010), when it held that a criminal defense lawyer must inform a client of the potential deportation consequences of conviction. *Chang Hong*, 671 F.3d at 1154-55. We said *Padilla* recognized a new rule because (1) "[b]efore *Padilla*, most state and federal courts had considered the failure to advise a client of potential collateral consequences of a conviction to be outside the requirements of the Sixth Amendment"; and (2) *Padilla* "generated both a strong

---

[12] Even a unanimous Supreme Court decision can produce a new rule when the Court arrives at its decision by choosing among several plausible readings of existing precedent. In *Johnson v. McKune*, 288 F.3d 1187 (10th Cir. 2002), we held that *Sandstrom v. Montana*, 442 U.S. 510 (1979)—holding a particular jury instruction about intent was unconstitutional—announced a new rule, even though the decision was unanimous. *McKune*, 288 F.3d at 1196-97. We noted that the *Sandstrom* Court had rejected a line of precedent the losing party urged, which suggested that the Court's ultimate result was not "dictated" by precedent. *Id.* at 1196. ("The fact that contrary federal or state precedent exists, while not dispositive, is relevant to our analysis.").

15

concurrence and dissent," including an opinion by Justice Alito calling the ruling a "major upheaval in Sixth Amendment law." *Id.* at 1154. Although *Padilla* had not overturned any precedent, its holding was new. *Id.* at 1155; *see also Chaidez*, 568 U.S. at 354, 358 (concluding *Padilla* announced a new rule).

### ii. General bar on retroactivity and exceptions

"It is generally agreed that both lower federal courts and the Supreme Court can decide the retroactive applicability of a new rule of constitutional law announced by the Supreme Court when reviewing an initial petition" under § 2255. Brian R. Means, *Federal Habeas Manual* § 9A:30 (2018).[13] Under *Teague*, a new constitutional rule of criminal law or procedure is not generally applicable retroactively to cases on collateral review. 489 U.S. at 310. But *Teague* recognized two exceptions: (1) rules that change what conduct is punishable under substantive criminal law, and (2) "watershed rules of criminal procedure." *Id.* at 311; *accord* Means, *Federal Habeas Manual* § 9A:30 ("A 'new rule' is retroactively applicable to cases on collateral review for purposes of §§ 2244(d)(1)(C) and 2255(f)(3) if either of the two non-retroactivity exceptions established in [*Teague*] apply . . . .").

---

[13] The Government appears to argue that Dr. Hopkins's motion is untimely because (1) § 2255(f)(3) can provide relief based on a "newly recognized right" only when another court has previously held the right to be retroactive and (2) no court has done so as to *Luis*. *See* Aplee. Br. at 6 (quoting *United States v. Hoon*, 762 F.3d 1172, 1173 (10th Cir. 2014)). We do not address this argument. We instead assume without deciding that we can reach the issue of whether *Luis* can be applied retroactively to Dr. Hopkins's case, and we conclude it cannot.

16

First, newly recognized substantive rules—those "forbid[ding] criminal punishment of certain primary conduct" or "prohibit[ing] a certain category of punishment for a class of defendants because of their status or offense"—are not subject to the general retroactivity bar. *Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016) (quotations omitted). A rule is "substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Welch v. United States*, 136 S. Ct. 1257, 1264-65 (2016) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)); *see also Williams v. United States*, 91 S. Ct. 1171, 1180 (1971) (Harlan, J., concurring) (explaining that substantive rules "place . . . certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority").

For example, in *Welch*, the Supreme Court stated that its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is void for vagueness, applies retroactively. *Welch*, 136 S. Ct. at 1268. The *Welch* Court explained that "the rule announced in *Johnson* is substantive. By striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* at 1265 (quoting *Schriro*, 542 U.S. at 353).[14]

---

[14] The Court elaborated on the substantive impact of *Johnson*:
> Before *Johnson*, the Act applied to any person who possessed
> a firearm after three violent felony convictions, even if one or

17

Second, "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are not subject to the general rule against retroactivity. *Beard v. Banks*, 542 U.S. 406, 417 (2004) (quotations omitted). To qualify as watershed, the rule must (1) be "necessary to prevent an impermissibly large risk of an inaccurate conviction" and (2) "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (quotations omitted).

Since *Teague,* the Supreme Court has never identified a rule that meets this description. *See Beard*, 542 U.S. at 417 ("[W]e have yet to find a new rule that falls under the second *Teague* exception."). It has repeatedly referred to its decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963)[15]—recognizing an indigent defendant's right to appointed counsel in felony cases—as the only rule that might have fallen within the second *Teague* exception, if it had been decided after *Teague*.[16] *See Whorton*, 549 U.S.

---

<div style="padding-left:2em">

more of those convictions fell under only the residual clause.
An offender in that situation faced 15 years to life in prison.
After *Johnson,* the same person engaging in the same conduct
is no longer subject to the Act and faces at most 10 years in
prison.

</div>

*Welch*, 136 S. Ct. at 1265.

[15] "[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon*, 372 U.S. at 344.

[16] In *Johnson v. Zerbst*, 304 U.S. 458 (1938), the Supreme Court said the Sixth Amendment right to counsel requires federal courts to appoint lawyers for indigent

at 419.  The Court has explained that this exception is "meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty," *Beard*, 542 U.S. at 417, and has "not hesitated to hold that less sweeping and fundamental rules [than *Gideon*] do not fall within *Teague*'s second exception," *id.* at 418.  For instance, in *Beard*, the Supreme Court ruled that its decision in *Mills v. Maryland*, 486 U.S. 367 (1988), which invalidated capital sentencing schemes that required juries to disregard mitigating factors that are not found unanimously, was not a "watershed rule."  *Beard*, 542 U.S. at 420.  The Court explained, "However laudable the *Mills* rule might be, it has none of the primacy and centrality of the rule adopted in *Gideon*."  *Id.* (quotations omitted).

Very few cases discuss the retroactivity of Supreme Court decisions extending the Sixth Amendment right to counsel of choice, and we have not found a case holding that any such decision was retroactively applicable.  The Seventh Circuit has even held that

---

defendants in felony cases.  *Id.* at 462-63; *see Alabama v. Shelton*, 535 U.S. 654, 661 (2002).  *Gideon* made "it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one."  *Burgett v. Texas*, 389 U.S. 109, 114 (1967).  In *Argersinger v. Hamlin*, 407 U.S. 25 (1972), the Court held that the Sixth and the Fourteenth Amendments require states to provide appointed counsel to defendants who face a sentence of incarceration for any crime.  *Id.* at 40.  Before *Teague* was decided, the right to counsel at trial, *Gideon*, on appeal, *Douglas v. California*, 372 U.S. 353 (1963), and at other critical stages of criminal proceedings were made retroactive.  *See Arsenault v. Massachusetts*, 393 U.S. 5, 6 (1968); *Stovall v. Denno*, 388 U.S. 293, 297 (1967).

19

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), which established that a deprivation of the right to counsel of choice constitutes structural error, is not a watershed rule. *Rodriguez v. Chandler*, 492 F.3d 863, 866 (7th Cir. 2007).

      b.  Luis *recognized a new right that is not retroactively applicable*

      Dr. Hopkins filed his § 2255 motion more than one year after his conviction became final. His motion would be timed-barred under § 2255(f)(1) unless he could show under § 2255(f)(3) that the right recognized in *Luis* is new and retroactive. We conclude that *Luis* recognized a new right. But because we also conclude that *Luis* is neither a *Teague* substantive rule nor a "watershed rule[] of criminal procedure," *Beard*, 542 U.S. at 417, that warrants retroactive application, we hold his motion does not satisfy the requirements of § 2255(f)(3) and was thus untimely.

      i.  <u>*Luis* recognized a new right</u>

      We disagree with the district court's apparent ruling that *Luis* did not recognize a new right for § 2255(f)(3) purposes. *See Hopkins*, 2018 WL 1393780, at *2. The holding in *Luis* was not "dictated by precedent existing at the time [Dr. Hopkins's] conviction became final." *Teague*, 489 U.S. at 301. *Luis*'s rule that the Sixth Amendment prevents the government from pretrial freezing or seizing of untainted assets to prevent their dissipation was not "apparent to all reasonable jurists" in 2010. *Chaidez*,

20

568 U.S. at 347 (quotations omitted).[17]  The pre-*Luis* cases—*Caplin & Drysdale* and *Monsanto*—authorized the government to seize or freeze assets before trial upon probable cause that the assets would be subject to post-conviction forfeiture, even if doing so prevented the defendant from paying an attorney.  As discussed above, Justice Breyer's plurality opinion explicitly distinguished *Caplin & Drysdale* and *Monsanto*.  It explained, "[T]he nature of the assets at issue here differs from the assets at issue in those earlier cases.  And that distinction makes a difference."  *Luis*, 136 S. Ct. at 1085.  Neither *Caplin & Drysdale* nor *Monsanto* had specified that only "tainted" assets could be seized.[18]

The dissenting Justices' statements in *Luis* support that the Court established a new rule.  Justice Kennedy referred to the plurality's ruling that untainted assets could not be frozen as "unprecedented," stating that it "ignore[d] . . . precedent[]."  *Luis*, 136 S. Ct. at 1103 (Kennedy, J., dissenting).  And Justice Kagan believed *Monsanto*

---

[17] On direct appeal, this court also did not anticipate *Luis*'s conclusion that *Caplin & Drysdale* and *Monsanto* would not apply to the Hopkinses' escrowed funds. We said that, just as the government in those cases had an interest in "obtaining full recovery of all forfeitable assets," the IRS had a "longstanding, strong interest in collecting delinquent taxes and securing its interests in delinquent taxpayer's property through liens and levies." *Hopkins*, 509 F. App'x at 773.

[18] Title 21 U.S.C. § 853, the forfeiture statute at issue in *Caplin & Drysdale* and *Monsanto*, authorizes forfeiture of untainted assets.  It "permits the Government to confiscate property untainted by the crime" as "substitute property" when property tied to the crime is unreachable for a variety of reasons.  *Honeycutt v. United States*, 137 S. Ct. 1626, 1633-34 (2017).

controlled. *Id.* at 1112 (Kagan, J., dissenting). Thus, at least some "reasonable jurists,"

*Chaidez*, 568 U.S. at 347, could have concluded that *Caplin & Drysdale* and *Monsanto*

did not "dictate[]" the rule in *Luis*. *Teague*, 489 U.S. 301. Accordingly, *Luis* recognized

a new right that can support a late-filed § 2255 motion if it is retroactive.[19]

### ii. *Luis* is not retroactive on collateral review

The Supreme Court has not stated that the rule it announced in *Luis* would apply

retroactively to cases on collateral review. As a result, the *Luis* rule can satisfy

§ 2255(f)(3) and render Dr. Hopkins's motion timely only if it qualifies for one of

*Teague*'s two exceptions to the retroactivity bar. Because *Luis* does not qualify for either

exception, Dr. Hopkins's motion was untimely under § 2255(f)(3).

### 1) Change in substantive law

As Dr. Hopkins appears to acknowledge,[20] *Teague*'s first exception does not

apply. *Luis* addressed whether the government could freeze or seize certain assets

---

[19] Dr. Hopkins's position on whether *Luis* stated a new rule appeared to shift from his briefing to oral argument. In his brief, he contends that *Luis* "applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law." Aplt. Br. at 8. In the alternative, he argues that *Luis* qualifies for retroactivity under both of the *Teague* exceptions. *See id.* at 15-18. At oral argument, counsel for Dr. Hopkins advanced only the alternative argument, contending that *Luis* recognized a new right that qualifies for retroactive applicability as a watershed rule of criminal procedure. When asked, "You're saying it was a new rule?," counsel responded, "Yes, Your Honor. I think it's a new rule." Oral Arg. at 6:02-6:08.

[20] Dr. Hopkins's counsel stated at oral argument that the § 2255 motion is timely only if *Luis* qualifies for *Teague*'s second exception:

depending on whether those assets were tainted or untainted by the defendant's crime.  It

did not exempt any conduct from criminal punishment or spare any defendants from

punishment because of their status or the nature of their offense.  *See Montgomery*, 136

S. Ct. at 732.  Rather than "plac[ing] . . . certain kinds of primary, private individual

conduct beyond the power of the criminal law-making authority," *Williams*, 91 S. Ct. at

1180, *Luis* addressed a governmental function—freezing or seizing assets.  Accordingly,

*Luis* cannot be eligible for retroactivity under *Teague*'s first exception.

### 2)  Watershed procedural rule

*Luis* also does not qualify for *Teague*'s second exception because it did not

announce a watershed rule of criminal procedure.  As discussed above, the Supreme

Court has not held a new rule of criminal procedure to be retroactive since *Teague* and

has repeatedly stated that *Gideon* is the only such rule that would qualify.  And we have

found no lower federal court case holding that a new Supreme Court rule on the right to

counsel of choice should apply retroactively on collateral review.

---

The Court:  I take it that you have to rely on a *Teague* exception to survive on this appeal.
Counsel:  I do.
The Court:  And so, your case . . . rises or falls on the watershed procedural rule.
Counsel:  It rises or falls on that.  I absolutely believe that.

Oral Arg. at 15:10-15:28.

23

Dr. Hopkins argues that *Luis* fashioned a watershed rule because, like the *Gideon* right to counsel, the right to use untainted assets to pay for counsel of choice "affect[s] the determination of a defendant's guilt." Aplt. Reply Br. at 19. This is so because "the inability to present a desired defense by counsel of choice does increase the likelihood of inaccurate convictions and fundamental procedural fairness." *Id.* Although this argument is not without merit, it does not meet *Teague*'s high bar for a watershed rule.

The right to counsel of choice and the *Gideon* right to court-appointed counsel are distinct rights guaranteed under the Sixth Amendment. The right to counsel of choice concerns the ability to select a particular lawyer and "does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151; *see also Caplin & Drysdale*, 491 U.S. at 624 ("The Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire.").

Deprivation of the right to counsel of choice can be a structural error that "affec[ts] the framework within which the trial proceeds," *Gonzalez-Lopez*, 548 U.S. at 148, not because of its impact on the accuracy of the trial but because it "protects an interest in [the defendant's] autonomy," *Rodriguez*, 492 F.3d at 866; *see also United States v. Gordon*, 710 F.3d 1124, 1135 (10th Cir. 2013) (explaining that the right to counsel of choice "stems from a defendant's right to decide what kind of defense he wishes to present" (quotations omitted)). It therefore does not follow that an extension of the right to counsel of choice satisfies the second *Teague* exception. *Tyler v. Cain*, 533

24

U.S. 656, 666 n.7 (2001) ("Classifying an error as structural does not necessarily alter our understanding of . . . bedrock procedural elements.").

The new right recognized in *Luis* does not meet the *Whorton* criteria for a watershed rule. Dr. Hopkins has not shown that extending pretrial protection to untainted assets so that he can pay counsel of choice is "necessary to prevent an impermissibly large risk of an inaccurate conviction." *Whorton*, 549 U.S. at 418 (quotations omitted). Even without a right to the registry funds, he continued to have the right to appointed counsel and effective assistance of counsel under the Sixth Amendment. Nor has he shown that the *Luis* rule "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* Even a "showing that a new procedural rule is *based* on a 'bedrock' right" is insufficient because "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Id.* at 420-21.

We are not asked to decide whether the right to counsel of choice is itself a watershed procedural rule, but rather whether *Luis*'s extension of that right qualifies as a watershed rule. *Luis*'s new application protecting the right to use untainted, forfeitable assets to pay for counsel of choice is not an extension of the core right to appointed counsel recognized in *Gideon*. Before *Luis*, defendants who could not pay counsel of their choice because their untainted assets were seized or frozen were not left without legal representation. They could instead hire a less expensive lawyer or rely on appointed counsel. After *Luis*, they may pay counsel of their choice. Because the right

25

to counsel of choice is not the same as the right to have counsel at all, and because *Luis*'s

protection of the right to use untainted assets to hire counsel of choice is not an extension

of the *Gideon* right, *Luis* is not sufficient to meet *Teague*'s second exception.  In short,

*Luis* is not *Gideon*, and *Luis* does not extend *Gideon*.  *See Chang Hong*, 671 F.3d at

1158.[21]

## III.  **CONCLUSION**

The new right recognized in *Luis* is not retroactively applicable because (1) it did

not change what conduct is punishable under substantive criminal law and (2) it is not a

watershed procedural rule.  As a result, Dr. Hopkins cannot rely on *Luis* to satisfy the

timeliness requirements of § 2255(f)(3).  His § 2255 motion was properly dismissed as

untimely.  We affirm the district court's judgment.

---

[21] In the *Gideon* right-to-counsel context, the Eleventh Circuit has allowed for retroactive application of a new rule that extends the *Gideon* right to counsel on the theory that such rules are inseparable from the "bedrock procedural element" of *Gideon*. *Howard v. United States*, 374 F.3d 1068, 1080-81 (11th Cir. 2004).  *Luis* would not qualify for such treatment.  *Luis* did not extend the right to counsel to a context in which the *Gideon* right was not previously available.  In cases like *Luis* and this one, defendants already have the right to appointed counsel if they cannot afford to hire a lawyer.  The question in *Luis* was whether the defendant had the right to use untainted assets to pay for counsel of choice.